UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBBIE OHLENDORF and SANDRA ADAMS,   )
                     Plaintiffs,     )
                               )     No. 1:16-cv-1439
-v-                           )
                               )     Honorable Paul L. Maloney
UNITED FOOD & COMMERCIAL WORKERS    )
INTERNATIONAL UNION, LOCAL 876,       )
                    Defendant.   )
—————————————————————————)

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiffs Robbie Ohlendorf and Sandra Adams are former members of United Food & Commercial Workers International Union, Local 876.  In the summer of 2016, Plaintiffs submitted letters to Local 876, resigning their membership and revoking the authorization to have union dues withdrawn from their paychecks.  Local 876 accepted their resignations, but did not accept the revocations of dues authorizations.  Local 876 explained that the requests to stop deducting dues were not submitted in the proper manner; Plaintiffs' requests were not submitted during the proper window period and were not sent by certified mail.

Plaintiffs filed this lawsuit, alleging that Local 876's revocation policy is unlawful.  Plaintiffs assert two claims: (1) breach of duty of fair representation and (2) violation of § 302(c)(4) of the Labor Management Relations Act (LMRA).  The underlying premise of the lawsuit is that unions cannot create policies that restrict a member's ability to stop paying dues when they resign their membership.  But, in rejecting Plaintiffs' revocations, Local 876 did not enforce one of its own unilateral policies.  Instead, Local 876 merely required Plaintiffs to follow the terms and conditions of a voluntary agreement between the employee

and the employer, which both Plaintiffs executed.  Therefore, Plaintiffs' claims will be dismissed.[1]

## I.

Under the notice pleading requirements, a complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); *see Thompson v. Bank of America, N.A.*, 773 F.3d 741, 750 (6th Cir. 2014) (holding that to survive a Rule 12(b)(6) motion, the complaint "must comply with the pleading requirements of Rule 8(a)").  The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint.  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).  Although the court considers the well-pled factual allegations in the complaint, a motion to dismiss turns exclusively on questions of law.  *See Thomas v. Arn*, 474 U.S. 140, 150 n.8 (1985); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 674–75 (2009) ("Evaluating the sufficiency of the complaint is not a 'fact-based' question of law, . . . .").

To survive a motion to dismiss, "[t]he complaint must 'contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable

---

[1] This matter comes before the Court on Defendant Local 876's motion to dismiss.  (ECF No. 6).  Plaintiffs filed a response (ECF No. 7) and Local 876 filed a reply (ECF No. 8).  The Court held a hearing on the motion on June 26, 2016.

legal theory.'" *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (citation omitted). The plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level. *Bell Atl.,* 550 U.S. at 555. And the claim for relief must be plausible on its face. *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citations omitted). When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform,* 648 F.3d at 369. Naked assertions without further factual enhancement, formulaic recitations of the elements of a cause of action, and mere labels and conclusions will be insufficient for a pleading to state a plausible claim. *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) (citations omitted).

## II.

For the purpose of this motion, the well-pleaded factual allegations in the complaint must be taken as true.

Both plaintiffs work for Oleson's Food Store in Traverse City, Michigan. (ECF No. 1 Compl. ¶¶ 1 and 2 PageID.3.) Ohlendorf works part time as a stocking clerk. (*Id.* ¶ 1.) Adams works as a cashier. (*Id.* ¶ 2.) Local 876 is the exclusive representative for the purpose of collective bargaining for certain Oleson employees. (*Id.* ¶ 4.)

Both plaintiffs are former members of Local 876.  (Compl. ¶¶ 1 and 2.)  Prior to September 24, 2016, the collective bargaining agreement between Oleson and Local 876 contained an agency shop provision, which required employees to join or financially support Local 876.  (*Id.* ¶ 5.)  When Ohlendorf started working at Oleson on August 16, 2013, he signed a union membership application, which include a check-off authorization provision. (*Id.* at 6.)  Adams began working for Oleson in 2006 and had been a member of Local 876 since then.  (*Id.* ¶ 7 PageID.4.)  On May 29, 2013, Adams also signed the membership application containing the check-off authorization provision.  (*Id.*)  The check-off authorization appears at the bottom of the application for union membership.

Voluntary Check-Off Authorization

To Any Employer Under Contract with the United Food & Commercial Workers Local Union 876

You are hereby authorized and directed to deduct from my wages, commencing with the next payroll period, an amount equivalent to Union dues and initiation fees as shall be certified by Local 876 of the United Food & Commercial Workers International Union, and to remit to the said Local Union.

This authorization and assignment is not contingent upon my present or future membership in the Union.  It shall be irrevocable for a period of one year from the date of execution or until the termination date of the agreement between the Employer and Local 876, whichever occurs sooner, and from year to year thereafter unless not less than thirty (30) days and not more than forty-five (45) days prior to the end of any subsequent yearly period, I give the Employer and the Union written notice of revocation via certified mail bearing my signature thereto.

(Comp. ¶ 8; ECF No. 1-1 PageID.15.)

Ohlendorf resigned his membership and attempted to revoke his check-off authorization on June 6, 2016.  (Compl. ¶ 16 PageID.5.)  Ohlendorf sent a letter to Local

876 using regular mail.  (*Id.*)  He also hand delivered a letter to the inbox for the manager at Oleson.  (*Id.*)  On June 7, 2016, Ohlendorf emailed the letter to William Crim, Local 876's executive assistant to the president.  (*Id.*)  In the letter, Ohlendorf wrote that if there was a window period for exercising his revocation, "consider this notice effective the first day of such window period[.]"  (ECF No. 1-1 PageID.19.)  Ohlendorf also requested a copy of the authorization form he signed and "the actual date of when that window period applies to me and the date at which I can exercise my rights to fully opt out of agency fees under the right to work law."  (*Id.*)  In a letter dated June 21, 2016, Local 876 informed Ohlendorf that his "attempt at revocation does not conform with the time and other constraints collaborated [sic] in the authorization."  (ECF No. 1-1 PageID.13.)  Oleson continues to deduct union dues from Ohlendorf's paychecks.  (Compl. ¶ 17 PageID.6.)

On July 14, 2016, Adams mailed a letter to Local 876 in which she resigned her membership and attempted to revoke her check-off authorization.  (Compl. ¶ 18.)  In a letter dated July 19, 2016, Local 876 informed Adams that her "attempt at revocation does not conform with the time and other constraints elaborated in the authorization."  (ECF No. 1-1 PageID.16.)  Oleson continues to deduct union dues from Adam's paychecks.  (Compl. ¶ 19.)

Plaintiffs bring two claims against Local 876.  In Count 1, Plaintiffs allege Local 876 breached its duty of fair representation.  In Count 2, Plaintiffs allege Local 876 violated § 302(c)(4) of the LMRA, 29 U.S.C. § 186(c)(4).  In both counts, Plaintiffs challenge the conditions necessary to revoke the check-off authorization.  Plaintiffs challenge the fifteen-day window period and the requirement that the revocation be sent using certified mail.  In

Count 1, Plaintiffs assert the two conditions are arbitrary.  Plaintiffs also assert that Local 876 has acted in bad faith by maintaining the two conditions.  By enforcing those two conditions, Plaintiffs contend Local 876 has breached its duty of fair representation.  In Count 2, Plaintiffs assert that the conditions in the check-off authorization are not authorized by § 302 of the LMRA.  And, because the conditions are not authorized by statute, Plaintiffs conclude Local 876 violates the LMRA by enforcing the conditions.  The Court addresses the two claims in inverse order.

III.

The LMRA generally prohibits payments from an employer to the union representative of its employees.

> It shall be unlawful for any employer . . . to pay, lend or deliver . . . any money or other thing of value—
> . . .
> (2) to any labor organization . . . which represents . . . the employees of such employer who are employed in an industry affecting commerce;

29 U.S.C. § 186(a)(2).  Violations of the general prohibition are enforced by criminal penalties, including fines and a term of imprisonment.  *Id.* § 186(d).  The statute contains a number of exceptions, including an exception for the deduction of union dues from an employee's paycheck.

> (c) Exceptions
> (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: *Provided,* That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner;

*Id.* § 186(c)(4).  These written assignments are frequently called check-offs.  The provision, § 186(c)(4), "allows, but does not require, the authorization to be irrevocable, and it places a maximum on the length of permissible irrevocability."  *NLRB v. United States Postal Serv.,* 833 F.2d 1195, 1199 (6th Cir. 1987), *supplemented,* 837 F.2d 476 (6th Cir. 1988).

Plaintiffs' characterization of the issue presented by Count 2 establishes two errors, both of which undermines the claim.  According to Plaintiffs, the statute "does not permit the Union to make [the authorization] irrevocable unless the revocation request is communicated during a fifteen-day period, by certified mail.  Nothing in Section 302(c)(4) permits that additional window period or heightened mail requirement."  (ECF No. 7 Response at 9 PageID.99.)  To prevail on this claim, Plaintiffs bear the burden of showing that the window period and the certified mail requirement violate the statute, not merely that the statute does not permit those conditions.

Plaintiffs' first error is to infer statutory prohibitions on conditions of revocation from the lack of permission for those condition in the statute language.  Plaintiffs are correct that the statute does not authorize window periods or requirements for certified mail.  A plain reading of the statute establishes that it is silent about the conditions of which Plaintiffs complain.  Section 186(c)(4) clearly authorizes the use of check-off authorization.  The provision also allows the authorization to be irrevocable for up to one year.  The statute does not speak to the manner in which the revocation can be made.

Plaintiffs' observation about the statute, that it does not address conditions of revocation, does not require the conclusion that the statute prohibits any conditions or even these two conditions.  Plaintiffs' reasoning on the proper interpretation of the statute

demonstrates variations of a fallacy of informal logic.  In one form, the fallacy engages in erroneous reasoning where the absence of evidence become evidence of that absence.  In another form, the fallacy reaches conclusions based on silence (*argumentum ex silentio*).  In both cases, the proof supporting one conclusion is the absence of evidence or silence in support of the opposite conclusion.  Here, Plaintiffs reason that the lack of permission in the statute for window periods and certified mail requirements necessarily means that the statute prohibits window periods and certified mail requirements.  That reasoning is flawed.  *See, e.g., Robinette v. Jones*, 476 F.3d 585, 593 (8th Cir. 2007) ("While § 304.155 authorizes law enforcement officers to tow vehicles in a variety of circumstances, it does not prohibit law enforcement officers from towing vehicles not covered by that statute.  Section 304.155 is silent about the particular conditions at issue here.").  And, Plaintiffs have not identified any presumptions that would require the Court to adopt their interpretation of the otherwise silent statute.  *See, e.g., In re Crescent City Estates, LLC*, 588 F.3d 822, 825 (4th Cir. 2009) ("Appellants argue that because § 1447(c) does not explicitly prohibit a fee award against counsel, it thereby permits it.  Appellants, however, have the presumption reversed.  The proper presumption is that when a fee-shifting statute does not explicitly permit a fee award against counsel, it prohibits it.  In short, silence does not equal consent.").  Plaintiffs have not identified any policy rationale or identified any part of the larger statutory scheme that would support their interpretation of the otherwise silent statute.  *See, e.g., Smiley v. E.I. Dupont De Nemours and Co.*, 839 F.3d 325, 333 (3d Cir. 2016) ("We disagree with DuPont's notion that the FLSA's silence indicates permission.  While it is true that the statute does not explicitly set forth this prohibition, the policy rationales underlying the FLSA do not permit

crediting compensation used in calculating an employee's regular rate of pay because it would allow employers to double-count the compensation.").

Plaintiffs' second error is their assertion that Defendant has made the revocations subject to certain conditions. Plaintiffs, not Defendant, voluntarily imposed these conditions on their ability to revoke their check-off authorizations. Plaintiffs voluntarily signed the authorization. Several authorities have held that check-off authorizations are voluntary assignments or contracts. The National Labor Relations Board (NLRB) has held that a check-off authorization permitted by § 186(c)(4) "is a contract between employer and employee, the terms of which are required by statute to be in writing." *Cameron Iron Works*, 235 NLRB 287, 289 (N.L.R.B. 1978), *enforcement denied by NLRB v. Cameron Iron Works, Inc.*, 591 F.2d 1 (5th Cir. 1979). The Sixth Circuit stated "[i]t is well settled that the dues checkoff provisions are intended to be an area of voluntary choice for the employee[,]" and threats by the union or the employer coercing an employee to sign the authorization are prohibited. *Armco, Inc. v. NLRB*, 832 F.2d 357, 364 (6th Cir. 1987). The Fifth Circuit held that a check-off authorization "is a contract between the employer and the employee, authorizing the employer to withhold dues from the employee's wages, but reserving to the employee the power of revocation at specified periods." *NLRB v. Atlanta Printing Specialties and Paper Prods. Union 527, ALF-CIO*, 523 F.2d 783, 785 (5th Cir. 1975) (finding that when the union directed the employer to refuse to honor timely submitted revocations, the union committed an unfair labor practice).

Because the check-off authorization is a voluntary agreement, the **NLRB** has held that restrictions in the revocation of the authorization are permitted. "Checkoff is a means by

which employees voluntarily assign a portion of their wages to a union in order to pay their dues and other obligations to the union." *Frito-Lay*, 243 NLRB 137, 137 (N.L.R.B. 1979). And, consistent with the plain language of § 186(c)(4) and the nature of contracts, restrictions on the ability to revoke checkoff authorizations do not violate the statute.

> If checkoff authorizations are irrevocable for stated periods and automatically renewed for like periods, as long as employees are accorded an opportunity to revoke their authorizations at *least* once a year and at the termination of any applicable collective-bargaining agreements. And the limiting of the opportunity to revoke to a reasonable escape period, such as between 20 and 10 days before the expiration of either of these periods, does not require a different result.

*Id.* at 138.

Although the Sixth Circuit has not considered whether conditions in a check-off authorization violate § 186(c)(4), the circuit has upheld conditions in a check-off authorization under other labor statutes. In *NLRB v. United States Postal Service*, two members of the American Postal Workers Union attempted to resign from the union and asked the Postal Service to stop deducting union dues from their paychecks. Both employees had signed authorization forms for the deductions, which was permitted by the Postal Reorganization Act (PRA). The authorization form signed by the employees, "provided that the deduction authorization would be irrevocable for one year, and would automatically be renewed for an additional year unless revoked during a ten-day period at the end of each yearly period." *Postal Service*, 833 F.2d at 1197. The Postal Service rejected the resignations from membership and the revocations of dues deductions because the notifications were not received inside the window period. An Administrative Law Judge (ALJ) found the union committed an unfair labor practice by refusing the resignations, but not by refusing the

revocations of dues deductions.  The NLRB reversed the ALJ on the second issue.  *Id.*  The NLRB found that 29 U.S.C. § 186(c)(4) was similar to the PRA, 39 U.S.C. § 1205 and concluded that the Postal Service committed an unfair labor practice under 29 U.S.C. § 158 when it refused to stop deducting membership dues as requested.  The NLRB followed a previously issued decision, *Postal Service and Dalton*, 279 NLRB 40 (N.L.R.B. 1986), in which it concluded that check-off authorizations were a quid pro quo for union membership and were, therefore, revocable when a member resigned from the union.  *Postal Service and Huber and Franklin*, 280 NLRB 1439, 1439 (N.L.R.B. 1986).  The NLRB then filed suit in federal court to enforce its decision.

The Sixth Circuit declined to enforce the NLRB's decision.[2]  *Id.* at 1196.  The court identified critical differences between the NLRA and the PRA, which undermined the NLRB's conclusion that the check-off authorizations in the two statutes were similar.   The court also found that because the employees voluntarily signed the authorization with full knowledge that it would be irrevocable except at defined intervals, it could not be an unfair labor practice.  *Id.* at 1201.

One court has reached a different conclusion.  In *Monroe Lodge No. 770, International Association of Machinists and Aerospace Workers, AFL-CIO v. Litton Business Systems, Inc.*, 334 F. Supp. 310 (W.D. Va. 1971), the district court held that the employer should honor revocations submitted after the first anniversary of the date the

---

[2] The NLRB was also unsuccessful in its attempt to enforce its decision in *Postal Service and Dalton*. Like the Sixth Circuit, the Ninth Circuit declined to enforce the NLRB's decision when it sued to enforce the outcome in *Postal Service and Dalton*.  *NLRB v. United States Postal Service*, 827 F.2d 548, 549 (9th Cir. 1987).

authorization was signed, even though the revocation was not submitted during the fifteen-day window period required by the authorization. *Id.* at 316-17. The court explained that those revocations became effective during the fifteen-day window of the second year. Because the employees gave the employer and the union notice, "it was unnecessary for the employees to resubmit revocations during the fifteen day period at the end of the second year." *Id.* at 317.

This Court is compelled to follow the Sixth Circuit's holding. The reasoning and the conclusions of the NLRB and the Fifth Circuit are persuasive. Voluntary check-off authorizations are permitted by § 186(c)(4), so long as employees have defined opportunities to revoke the authorization. The terms of the authorization signed by Ohlendorf and Adams are consistent with what the statute permits. The authorizations are voluntary agreements, contracts between the employee and the employer. The district court in *Monroe Lodge* did not consider the possibility that the authorization functioned as a contract, and did not address the ramifications of the authorization as a contract. Furthermore, the opinion was issued prior to the NLRB's opinion in *Frito-Lay* and also prior to the opinions issued by the Fifth and Sixth Circuits.

For these reasons, the Court finds that Plaintiffs have not stated a claim for which relief can be granted. The voluntary check-off authorizations do not violate § 186(c)(4).

IV.

In Count 1, Plaintiffs argue Local 876 breached its duty of fair representation. The duty of fair representation that a labor union owes to its members is a judicially-created doctrine. *See Vaca v. Sipes,* 386 U.S. 171, 177 (1967); *see also Comm'ns Workers of*

*America v. Beck*, 487 U.S. 735, 743 (1988) (noting the "judicially implied duty of fair representation."). The duty arises from § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), which provides that the representatives for collective bargaining are the exclusive representatives of all employees within a unit. *See Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998). The duty requires the exclusive agent to serve the interests of all members of the unit "without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca*, 386 U.S. at 177; *see Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). The duty is "akin to the duty owed by other fiduciaries to their beneficiaries." *O'Neill*, 499 U.S. at 75. The duty extends not only to negotiation activities, but also to the union's contract administration and enforcement efforts. *See Beck*, 487 U.S. at 743.

A union can breach its duty of fair representation by failing any of the "tripartite" standards. *Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010). "[T]he three named factors are three separate and distinct possible routes by which a union may be found to have breached it duty." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994). When challenged, the court considers the union's activities "in light of the factual and legal landscape at the time[.]" *O'Neill*, 499 U.S. at 67. To establish that a union breached its duty by acting arbitrarily, the plaintiff must show that the union's action as "so far outside a 'wide range of reasonableness' that it is wholly 'irrational[.]'" *Id.* at 78 (internal citation omitted). "The 'wholly irrational' standard is described in terms of 'extreme arbitrariness.'" *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 539 (6th Cir. 2003). "A union's conduct can be classified as arbitrary only when it is

irrational, when it is without a rational basis or explanation." *Marquez*, 525 U.S. at 46 (citing *O'Neill*). Negligence, ordinary mistakes and errors, and flaws in judgment will not suffice to meet the arbitrary standard. *Id.* at 538 (citations omitted).

To establish that a union breached its duty by acting in bad faith, the plaintiff must show that the union acted "'with an improper intent, purpose, or motive . . . encompass[ing] fraud, dishonesty, and other intentionally misleading conduct.'" *Merritt*, 613 F.3d at 619 (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). Several circuit courts have held that the bad faith standard provides a remedy for union members for only the most egregious conduct by a union. *E.g., Int'l Union of Elec., Salaried, Mach. and Furniture Workers, AFL-CIO v. NLRB*, 41 F.3d 1532, 1537–38 (D.C. Cir. 1994) (citing *O'Neill v. Airline Pilot's Ass'n., Int'l*, 939 F.2d 1199, 1203 (5th Cir. 1991) and *Alicea v. Suffield Poultry, Inc.*, 902 F.2d 125, 130 (1st Cir. 1990)). While a union's decisions are granted deference when a decision is challenged as arbitrary, no deference is afforded decisions challenged as bad faith. *Merritt*, 613 F.3d at 620–21.

## A.

Enforcing the window periods which limit when a check-off authorization may be revoked does not violate a union's duty of fair representation. The enforcement of varying window periods is neither arbitrary nor bad faith.

First, multiple federal courts have found that a union's use of window periods is not arbitrary. *E.g., Nielsen v. Int'l Ass'n of Machinists & Aerospace Workers, Local Lodge 2569*, 895 F. Supp. 1103, 1114–15 (N.D. Ind. 1995) (finding that the plaintiff failed to show that the window period was arbitrary and summarizing the opinions of two other courts that

reached the same conclusion), *aff'd*, 94 F.3d 1107, 1116–17 (7th Cir. 1996) ("Life is full of deadlines, and we see nothing particularly onerous about this one.  When people miss the deadline for filing an appeal to this Court, their rights can be lost forever, not just for eleven months, but that does not make time limits for filing appeals in violation of federal law.  Other courts that have considered 'window periods' have come to the same conclusion.") (collecting cases).  Because courts have sanctioned the use of window periods by a union, those opinions also undermine the conclusion that use of window periods constitute bad faith.  Plaintiffs attempt to distinguish *Nielsen* by pointing out that the factual underpinning is different; *Nielsen* involved *Beck* fee-objectors, not check-off authorizations.   The reasoning in *Nielsen* applies here, even if the facts are different.   *Nielsen* is persuasive because the allegation in that case was that the use of window periods was a breach of the duty of fair representation.  The court held that no breach of duty occurred.

Second, the fact that the window period varies from member to member does not require the conclusion that the use of a window period is arbitrary or bad faith.  The window period varies because the members signed the check-off authorizations at different times.  Thus, the reason the window period varies from member to member has a rational justification; it is tied to each member's anniversary date.

Third, the use of window periods is not a breach of the duty of fair representation because the window period is not a restriction that Defendant has imposed on its members.  Rather, the window period limitation is a condition of revocation that each member who signed the authorization voluntarily assumed.  Defendant is merely following the instructions provided by its members.

For these reasons, the use varying of window periods has some rational justification and is not conduct tantamount to fraud and dishonesty. Certainly, the window period may frustrate some former union members who wish to revoke the authorization. The fact that Defendant requires its members or former members to follow the condition to which they voluntarily agreed does not establish that Defendant is acting arbitrarily or in bad faith.

## B.

Enforcing the certified mail requirement for notice of revocation does not breach the union's duty of fair representation. The certified mail requirement is neither arbitrary nor bad faith.

First, using certified mail provides a record for when the notification was sent and received. Because the window period defines when a revocation will be accepted, and because the window period is permitted, the certified mail requirement establishes whether the notification was received during the applicable time. Although there may be other ways of establishing that the revocation was timely, that other methods are available does not render the requirement arbitrary or evidence bad faith.

Second, the certified mail requirement is not a breach of the duty of fair representation because it is not a restriction that Defendant has imposed on its members. The certified mail requirement is a condition of revocation that each member who signed the authorization voluntarily assumed. Defendant is merely following the instructions provided by its members. Again, the fact that Defendant requires its members or former members to follow the condition to which they voluntarily agreed does not establish that Defendant is acting arbitrarily or in bad faith.

Third, the Sixth Circuit's holding in *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. National Labor Relations Board*, 865 F.2d 791 (6th Cir. 1989) is not dispositive. In *International Union*, the court held that the certified mail requirement for resignation of union membership violated § 158(b)(1)(A) of the NLRA. The statute made it an unfair labor practice to restrain employees in the exercise of their right under § 157, which the court held included the right to abstain from union membership. *Id.* at 797. For this claim, Plaintiffs have not established that they have a statutory right to revoke their *check-off authorization* without restrictions. This is a factual difference between the two cases that is meaningful. If there were such a right, Plaintiffs would simply bring a statutory claim, rather than a breach of duty claim. Furthermore, Plaintiffs were successful in withdrawing their union membership.

## V.

Plaintiffs Ohlendorf and Adams have not stated claims for which this Court may grant relief. When Plaintiffs voluntarily signed the check-off authorization form, they agreed that the authorization could be revoked only during specified window periods and only by certified mail. Because Plaintiffs voluntarily signed these forms and voluntarily placed restrictions on their ability to withdraw the authorization, Plaintiffs cannot now complain that Defendant is holding them to their choice. Plaintiffs' claim for a violation of § 186(c)(4) fails. Section 186(c)(4) is silent as to how a revocation may be made. The Court cannot infer from the silence that the Congress prohibits window periods and certified mail requirements on the revocation of check-off authorizations. Plaintiffs' claim for breach of duty also fails. Both

the window period and the certified mail requirement have legitimate administrative purposes.

## ORDER

For the reasons provided in the accompanying Opinion, Defendant Local 876's motion to dismiss (ECF No. 6) is **GRANTED.** The two claims in the complaint are DISMISSED.

**IT IS SO ORDERED.**

Date:  June 30, 2017                               /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge